IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RONALD ALLEN HAILES,

      **Plaintiff,**

      v.                                      **CASE NO.  23-3111-JWL**

LAURA KELLY, et al.,

      **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF").  Plaintiff has paid the filing fee.  On May 25, 2023, the Court entered a Memorandum and Order to Show Cause (Doc. 11) ("MOSC") granting Plaintiff an opportunity to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC or to file an amended complaint to cure the deficiencies.  This matter is before the Court for screening Plaintiff's Amended Complaint (Docs. 17, 18).  The Court's screening standards are set forth in the Court's MOSC.

## I.  Amended Complaint

Plaintiff's Amended Complaint contains the same claims that he asserted in his original Complaint.  He claims that a UTM took it upon himself to make a new rule regarding quarantine. (Doc. 17, at 9.)  Although Plaintiff was told by A&D that he would be in quarantine for five days after his transfer, CC1 Beshears[1] extended it to seven days without the warden's permission and against policy.  *Id.*  Plaintiff claims that because Plaintiff was in quarantine, CC1 Beshears denied Plaintiff a phone call on April 11, 2023, and Plaintiff was unable to go to the law library on April 12, 2023.  *Id.*

---

[1]  The Court notes that Plaintiff has not named CC1 Beshears as a defendant.

Plaintiff also claims that on April 15, 2023, a CO in B1-cellhouse let Plaintiff out for quarantine yard at 6:36 p.m. when Plaintiff was supposed to be let out at 6 p.m. *Id*. at 9. Plaintiff claims that because he was taken back in at 7:15 p.m., he did not receive a full hour of yard that day. *Id*.

Plaintiff alleges that UTM Opliger[2] had all the tablet's turned off because some of the tablets were missing. *Id*. at 8. The UTM said she would not turn them back on until she gets the missing tablets back. *Id*.

Plaintiff alleges that a nurse violated HIPPA when she asked a Lt. if there was any need for Plaintiff to go to medical 10 minutes before Plaintiff goes to eat. *Id*. at 5, 8. Plaintiff claims a nurse violated HIPPA on April 17, 2023, when she came to Plaintiff's cell and told Plaintiff if he was going to act that way she would just leave. *Id*. at 8.

Plaintiff also claims that the KDOC is committing medical malpractice.[3] *Id*. Plaintiff claims that on May 17, 2023, an APRN stated she was going to order an EKG, an MRI, and an ultrasound on Plaintiff's heart, but PA Hammand refused to do so when the Plaintiff was at the SCJ because she said there was nothing life threatening wrong with Plaintiff. *Id*. Plaintiff claims that just because he has now been moved from the SCJ, and the situation has stopped, his claim should not be considered frivolous. *Id*. at 6. Plaintiff claims that Dr. Wilson[4], a doctor for Centurion, has not placed Plaintiff on a 2800 calorie diet with a snack or made sure Plaintiff's needs are being met. *Id*. at 8.

Plaintiff alleges that he should have been taken off of parole in May 2022. *Id*. at 4. Plaintiff alleges that he is being placed under a new law that went into effect in July 1993.

---

[2]  Plaintiff has not named UTM Opliger as a defendant.

[3]  Plaintiff appears to combine claims regarding his medical care at LCF with claims regarding his medical care at the SCJ. He mentions LCF and the KDOC, and PA Hammand works at the SCJ. The Court advised Plaintiff in the MOSC that he has asserted unrelated claims.

[4]  Plaintiff has not named Dr. Wilson as a defendant.

Plaintiff claims his parole officer thinks he can take the law into his own hands by making the new law applicable to Plaintiff. *Id*.

Plaintiff alleges that CO Brush called Plaintiff a "bitch" and told Plaintiff to file a grievance on him and it wouldn't be the first and wouldn't be the last one. *Id*. at 6.

Plaintiff names as defendants: Laura Kelly, Kansas Governor; Jeff Zmuda, Secretary of Corrections; PA Karen Hammand, Armour Health Care, SCJ; Parole Officer Joseph Oliver, Kansas Department of Parole; and CO Gregory Brush, LCF. Plaintiff seeks punitive damages in the amount of $250,000 from each defendant; "Injunctive Relief of $250,000" from each defendant; and $1,500 per day from the Kansas Department of State Parole. *Id*. at 12.

## II. DISCUSSION

Plaintiff's Amended Complaint contains the same claims he asserted in his original Complaint and fails to cure the deficiencies set forth in the Court's MOSC. Plaintiff continues to name Governor Kelly and Secretary of Corrections Jeff Zmuda as defendants. The Eleventh Amendment generally "bars federal suits against state officers in their official capacities for money damages." *Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) (unpublished) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)); *see also Staples v. United States*, 762 F. App'x 525, 529 (10th Cir. 2019) (unpublished) (stating that "§ 1983 authorizes official-capacity claims only for injunctive relief and not for damages") (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)). Plaintiff has failed to allege how either defendant personally participated in the deprivation of his constitutional rights. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234,

1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability).  As noted above, Plaintiff also makes allegations against various parties in the body of his complaint, but fails to name them as defendants.

Plaintiff has failed to state a claim regarding his medical care.  The Court found in the MOSC that Plaintiff failed to show that any defendant disregarded an excessive risk to his health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference.  Plaintiff's Amended Complaint fails to cure this deficiency.

Plaintiff's remaining allegations fail to allege a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm."  Plaintiff alleges he was held in quarantine for two extra days; was denied the use of the phone on one occasion; was denied the use of the law library on one occasion; and experienced a thirty-minute delay in being let out for yard on one occasion.  These allegations are not serious enough to state a constitutional violation.  Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered."  *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).  "While no single factor controls . . . the length of exposure to the conditions is often of prime importance."  *Id*.  As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases.  Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration."  *Id*. (citations omitted).

Plaintiff's claim that CO Brush called Plaintiff a "bitch" fails to state a claim for relief. As the Court advised Plaintiff in the MOSC, the Tenth Circuit has found that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (finding no constitutionally protected right where plaintiff claimed guard antagonized him with sexually inappropriate comment), *quoting Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992).

Plaintiff filed a supplement to his Amended Complaint in which he claims that there is an internal investigation against CO Brush, and Plaintiff's grievance against Brush was not handled properly according to policy. (Doc. 18, at 1.)  Plaintiff acknowledges that a grievance procedure is in place and that he used it.  Plaintiff's claims relate to his dissatisfaction with responses to his grievance.  The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system. *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials").  Plaintiff's claims

regarding the grievance process and the failure to properly respond to grievances are dismissed for failure to state a claim.

The Court also found in the MOSC that to the extent Plaintiff challenges the validity of his sentence in his state criminal case, or argues that he should have been paroled or is otherwise entitled to a speedier release, such a claim must be brought pursuant to a petition for writ of habeas corpus. "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody.*" *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added). When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement. *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state court remedies). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982); Therefore, any claim challenging his state sentence or seeking a speedier release is not cognizable in a § 1983 action.

Likewise, before Plaintiff may proceed in a federal civil action for monetary damages based upon an invalid conviction or sentence, he must show that his conviction or sentence has been overturned, reversed, or otherwise called into question. *Heck v. Humphrey*, 512 U.S. 477

(1994).  If Plaintiff has been convicted and a judgment on Plaintiff's claim in this case would necessarily imply the invalidity of that conviction, the claim may be barred by *Heck*.  In *Heck v. Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487.  In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order.  *Id*. at 486–87.  Plaintiff has not alleged that the conviction or sentence has been invalidated.

Plaintiffs seeks punitive damages, which "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'"  *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).   Plaintiff presents no plausible basis for a claim of punitive damages because he alleges no facts whatsoever establishing that any defendant acted with a sufficiently culpable state of mind.

Plaintiff also claims to be seeking injunctive relief in the form of money damages.  Injunctive relief and money damages are two separate forms of relief.  Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a physical injury.  Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

The Court advised Plaintiff in the MOSC that the violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to confer rights on inmates…." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

*Brown v. Wyoming Dept. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007).

The Court also found in the MOSC that Plaintiff's claim of a HIPAA violation does not state a claim for relief under § 1983. The Tenth Circuit Court of Appeals has determined that HIPAA does not create a private right of action for unlawful disclosures of medical information. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) ("Any HIPAA claim fails as HIPAA does not create a private right of action for alleged disclosures of confidential medical information.").

Plaintiff's Amended Complaint fails to cure the deficiencies set forth in the MOSC. The Court dismisses this matter for failure to state a claim.

## III.  Motions

### 1.  Motion for Emergency Medical Treatment (Doc. 14)

Plaintiff has filed a response to the MOSC and request for emergency medical treatment.

Plaintiff alleges that LCF is refusing to provide him with an MRI. (Doc. 14, at 1.) Plaintiff

gives no indication as to why he needs an emergency MRI, who is refusing him an MRI, or how

this claim is related to his claims in this case that deal with his conditions while housed at the

SCJ. To the extent he seeks an MRI while incarcerated at LCF, the Court notes that no medical

staff at LCF are named as defendants and his claims in this case are being dismissed.

Plaintiff also seeks a 30-day extension of time to show good cause, and makes arguments

regarding his claims based on his conditions at the SCJ. Plaintiff filed his Amended Complaint

after he filed this motion. Because Plaintiff subsequently filed an Amended Complaint regarding

his claims, and the Court has found that his Amended Complaint fails to state a claim, the Court

will not address those arguments. The motion is denied.

### 2. Motion for Relief (Doc. 15)

Plaintiff's motion for relief sets forth his request for damages in this case. Because the

Court is dismissing this case, the motion is likewise denied.

### 3. Motion for Court Order (Doc. 16)

Plaintiff asks the Court to order LCF to hand over Plaintiff's medical records and to order

the facility to allow Plaintiff to make legal copies. Plaintiff's claims have not survived screening

and any request for discovery is premature. Furthermore, in light of the Court's dismissal of

Plaintiff's claims, the request is moot.

## IV. Conclusion

The Court's MOSC provided that "[i]f Plaintiff does not file an amended complaint

within the prescribed time that cures all the deficiencies discussed herein, this matter may be

dismissed without further notice for failure to state a claim." (Doc. 11, at 16.) Plaintiff has

failed to show good cause why his claims should not be dismissed, and his Amended Complaint

fails to cure the deficiencies set forth in the MOSC.  This matter is dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motions (Docs. 14, 15, 16) are **denied**.

**IT IS FURTHER ORDERED** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated July 18, 2023, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**